# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 44585

VALIANT IDAHO, LLC, an Idaho limited liability company,

  Third Party Plaintiff-Cross Claimant-Respondent,

v.

VP INCORPORATED, an Idaho corporation,

  Defendant-Cross Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, June 2018 Term

Filed: November 1, 2018

Karel A. Lehrman, Clerk

---

Appeal from the district court of the First Judicial District of the State of Idaho, Bonner County. Hon. Barbara A. Buchanan, District Judge.

The judgment of the district court is <u>affirmed</u>, except as to the issue of discretionary costs, which issue is <u>vacated</u> and <u>remanded</u> for further action consistent with this Opinion.

James, Vernon & Weeks, P.A., Coeur d'Alene, attorneys for appellant. Susan P. Weeks argued.

McConnell, Wagner, Sykes & Stacey, PLLC, Boise, attorneys for respondent. Richard L. Stacey argued.

---

BEVAN, Justice.

This is an appeal of a complex real estate foreclosure and lien priority lawsuit. The appellant VP Inc. ("VP") claims that the district court erred in multiple ways and that this case should be remanded for further proceedings. We affirm in part and vacate and remand in part.

## I. FACTS AND PROCEDURE

This appeal arises from a failed golf course development project in Bonner County known as "The Idaho Club" undertaken by Pend Oreille Bonner Development, LLC ("POBD"). POBD took out several loans to finance the development of The Idaho Club and subsequently

1

defaulted on them, failed to pay mechanics and materialmen for their services, and failed to pay Bonner County real property taxes.

On October 13, 2009, Genesis Golf Builders, Inc. ("Genesis Golf") filed a complaint, in part alleging breach of contract and seeking to foreclose on its mechanic's and materialman's liens against POBD's property interest in The Idaho Club. In its complaint, Genesis Golf also named seventeen other individuals and entities as defendants that may have had property interests in The Idaho Club—which included VP. Cross-claims and counterclaims were alleged by several defendants.

During this litigation, three lending companies, R.E. Loans, LLC ("REL"), Pensco Trust Co. ("Pensco") and Mortgage Fund '08 ("MF08") (the "three lenders") assigned and/or sold all of their right, title, and interest in their three loans with POBD to Valiant Idaho, LLC ("Valiant"). The loans were secured by three mortgages (collectively the "Valiant Mortgages") that provided parcels of The Idaho Club as collateral. VP had an interest in certain lots containing water and sewer infrastructure (the lagoon lots and the well lots) and it held utility easements for the same. VP obtained its interest in The Idaho Club from quitclaim deeds to four parcels and an alleged equitable servitude and prescriptive easements.

When Valiant purchased the REL mortgage and the Pensco mortgage, property taxes for tax years 2008-2014 were unpaid and outstanding against the real property securing the loans. Valiant redeemed the real property subject to Bonner County's tax deeds by paying the outstanding property taxes on The Idaho Club, and in exchange received and recorded a redemption deed in Bonner County. Valiant subsequently filed motions for substitution, allowing it to be substituted as the real party in interest for the three lenders. Valiant later amended its answer and filed a counterclaim, cross-claims, and a third-party complaint for judicial foreclosure against POBD, VP, and others.

On November 19, 2014, POBD stipulated to entry of judgment against itself. POBD stipulated that it owed certain balances on the REL debt, the Pensco debt, and the MF08 debt. It also stipulated that Valiant had paid property taxes.

On January 20, 2015, Valiant filed its first motion for partial summary judgment against VP and two other defendants JV, LLC ("JV") and North Idaho Resorts, LLC ("NIR"), seeking a ruling that its assigned mortgages had priority over any other defendant's property interest in The Idaho Club and seeking "a judgment that Valiant's interest in a portion of the Idaho Club

property described in a redemption deed is senior to any right, title and interest of" VP. In response, VP filed the affidavit of Richard Villelli, VP's president, along with a memorandum in opposition. VP claimed that summary judgment was not appropriate for three reasons: (1) one of its parcels was not encumbered by the MF08 mortgage; (2) VP had prescriptive easement rights stemming from its infrastructure for the prescriptive period; and (3) VP had an equitable servitude upon the lots where its sewer lagoon, water systems, and pumping stations were located.

On April 14, 2015, the district court granted Valiant's motion for summary judgment, ruling that VP's interests were junior to the Valiant Mortgages as a matter of law and that the amount Valiant paid to redeem the property could be included with the amount due under the 2007 REL note. On April 29, 2015, VP filed its first motion for reconsideration without a supporting memorandum. This motion was never noticed for hearing. Valiant then filed what it deemed a "motion for entry of final judgment" on May 20, 2015, which requested that the district court: (1) make a determination of the real property described in the Valiant Mortgages and redemption deed; and (2) enter a judgment allowing foreclosure and sale of the encumbered property. This motion was filed and served more than 28 days before the hearing, so the court treated the motion as a second motion for summary judgment. The motion was accompanied by the declaration of C. Dean Shafer ("Shafer"), who was Valiant's title expert.

On June 16, 2015, the day before the hearing on Valiant's motion for entry of final judgment, VP filed a second motion for reconsideration, entitled "renewed motion for reconsideration and clarification." VP's second motion to reconsider was unsupported by additional evidence or testimony. VP filed no opposition to the motion for entry of final judgment, nor did it dispute the accuracy of Mr. Shafer's declaration. Yet at the hearing on Valiant's motion, VP argued that the motion was unfairly prejudicial. VP argued that Valiant had not proved sufficient foundation to foreclose upon the real property described in Valiant's original motion for partial summary judgment. It also asserted that Valiant did not assert priority over VP's alleged prescriptive easements and equitable servitude.

On June 23, 2015, the district court entered its memorandum decision and order granting Valiant's motion for entry of final judgment. The district court held that

> VP failed to file any briefs or affidavits in opposition to Valiant's motion for entry of final judgment, as required by Rule 7(b)(3)(B) and (E). If the defendants wanted to dispute the legal description set forth in the Declaration of C. Dean

3

Shafer, the proper mechanism was to file an opposing affidavit setting forth facts to the contrary. Having failed to do so, the Declaration of C. Dean Shafer stands on the record uncontroverted as to the issue of the proper legal description.

On July 21, 2015, the district court entered a memorandum decision and order denying VP's two motions to reconsider. In that memorandum the district court held:

> To date, Mr. Shafer's testimony in the Shafer Declaration establishing which properties Valiant has priority and seeks to foreclose still remains uncontroverted. This [c]ourt has not received any opposing affidavit specifically controverting the legal description put into evidence by the Shafer Declaration.

The court also noted in a footnote that "[i]f the defendants wanted to dispute the legal description set forth in the Declaration of [Mr.] Shafer, the proper mechanism was to file an opposing affidavit setting forth facts to the contrary. Having failed to do so, the Declaration of [Mr.] Shafer stands on the record uncontroverted as to the issue of the proper legal description." The court also held that VP's claims for prescriptive easements and an equitable servitude did not survive summary judgment because VP failed to present sufficient evidence to establish a genuine issue of material fact as to those claims.

On July 22, 2015, Valiant filed a motion for order of sale of real property seeking to have the parcels encumbered by the Valiant mortgages sold together at the foreclosure sale and asking the court to determine the order in which the lots/parcels should be sold. This motion included a second Shafer declaration. The court granted Valiant partial relief. Valiant then moved to alter or amend the district court's order for sale which included a third Shafer declaration. VP responded that Shafer's third declaration created issues of fact about which real property was encumbered by the Valiant Mortgages.

On July 30, 2015, another defendant, JV, filed one more motion to reconsider the district court's order denying VP's second motion to reconsider. On August 4, 2015, VP introduced another declaration of Richard Villelli in opposition to the order of sale. On August 19, 2015, VP filed its third motion to reconsider, dubbed "North Idaho Resorts, LLC and VP, Inc.'s motion to reconsider and motion to alter and amend judgment." This motion argued that VP's alleged prescriptive easements and equitable servitude survived summary judgment because its opposition to the motion for partial summary judgment raised genuine issues for trial. The third motion to reconsider challenged no aspect of the final judgment order nor did it include any additional testimony.

4

On September 4, 2015, the district court granted JV's motion to reconsider, which nullified the court's prior decisions respecting the description of the real property subject to the Valiant Mortgages. The court held there was "a genuine issue of material fact as to the legal description based upon Mr. Shafer's altered opinion. . . ." The court cautioned the defendants, however, that "if they will be disputing the accuracy of Mr. Shafer's legal description, they must comply fully with expert witness disclosure requirements." The court's order effectively nullified the district court's prior decisions respecting the description of the real property subject to the Valiant Mortgages. The court's order also specified that the "July 21st memorandum decision [is] affirmed in all other respects."

Valiant then filed a third motion for summary judgment on September 25, 2015, regarding the legal description of the property that secured its assigned mortgages. Valiant argued that Shafer's third declaration merely clarified his prior declarations regarding the legal description without altering it. VP responded that the motion for summary judgment should be denied because the Shafer declaration: (1) contradicted the prior declarations that had been made by Shafer; and (2) that Shafer's description did not match the legal description in the Valiant Mortgages.

The hearings for VP's third motion for reconsideration and Valiant's third motion for summary judgment were held on October 23, 2015. The district court denied VP's third motion to reconsider and granted Valiant's third motion for summary judgment regarding the legal description of the property because Mr. Shafer's testimony remained uncontroverted. The court also affirmed the outcome of its July 21 ruling on grounds different than those originally stated in the July 21st memorandum decision and order. The court found no issue of fact and that VP's claims of equitable servitude and prescriptive easements were "junior to Valiant's interest in the subject properties."

The only substantive issue that survived the district court's multiple summary judgment orders was whether POBD had satisfied the promissory notes secured by the Valiant Mortgages. After a four-day court trial on that issue, the district court found that the promissory notes were not satisfied. On July 20, 2016, the court entered its judgment awarding Valiant damages against POBD in the amount of $21,485,212.26, for the unpaid amount of the Valiant Mortgages. VP does not appeal this decision. The judgment also declared that the Valiant Mortgages were prior

5

in right, title, and interest to any interest claimed by VP. Section 2(aa) of the court's foreclosure decree included the following language taken from the Valiant Mortgages:

> Pursuant to the Valiant Mortgages, should POBD or its successor or assigns be in possession of or occupy any portion of the Idaho Club Property or improvements thereon at the time of the foreclosure sale, and should said occupant fail to deliver possession of said Parcel(s) to Valiant, said occupant shall immediately become the tenant of the purchaser at such sale, which tenancy shall be a tenancy from day-to-day, terminable at the will of the landlord, at a rental per day based upon the value of the Parcel and improvement, such rental to be due daily to the purchaser.

VP was provided a copy of the foreclosure decree before its entry and it did not object to the language in it before its execution. Even so, VP now challenges the validity of Section (aa) of the decree of foreclosure on appeal.

On August 22, 2016, Valiant was also awarded $15,554.88 in costs against VP—$12,174.26 of which were discretionary costs. VP appeals the award of costs on the same basis as its co-defendant NIR. *See Valiant Idaho, LLC v. North Idaho Resorts, LLC*, No. 44583, 2018 WL 4927560, at *1 (Idaho Oct. 11, 2018) *("North Idaho Resorts")*.

VP did not post a supersedeas bond or other security to prevent Valiant from executing upon the judgment. Thus, the sheriff's sale took place on November 7, 2016. Valiant purchased 155 of the parcels by credit bid. A third party purchased one parcel. The parcels purchased by Valiant included "Parcel 1" and "Parcel 2," on which VP held junior claims that had been foreclosed. Valiant refers to these parcels as the "Water/Sewer parcels." Valiant presented certificates of sale for these parcels to VP and requested an inspection of the improvements and infrastructure affixed to these parcels, as they were under VP's operation and control at the time. VP responded that it was unaware of anything in the foreclosure decree entitling Valiant to an inspection, and otherwise ignored the request.

In response, Valiant sent two letters to VP, demanding that VP vacate the premises in accordance with the foreclosure decree or Valiant would seek a writ of assistance from the court. Since this case was on appeal by then, Valiant moved to enforce judgment under Idaho Appellate Rule 13(b)(10) and 13(b)(13). The motion sought a writ of ejectment and/or assistance ejecting VP from the Water/Sewer parcels in accordance with the foreclosure decree. VP opposed the motion, asserting that Valiant had to bring a separate action to evict VP from the properties.

On March 6, 2017, the district court granted Valiant's request. The writ of assistance ordered the Sheriff to eject and remove VP from using, holding, or detaining all fixtures,

appurtenances, and improvements associated with the Water/Sewer parcels. VP did not appeal the writ of assistance.

On March 7, 2017, VP filed a motion for an order allowing use and access to Parcels 1 and 2 and to stay the enforcement order. The motion sought to stay enforcement of the writ of assistance to allow VP limited use and access to the Water/Sewer parcels to maintain water and sewer services pending the outcome of the appeal. VP claimed that unless its motion was granted, "nearly two hundred (200) residents, as well as the patrons and employees of the golf course would be without water and sewer services, including fire protection." On March 17, 2017, the Bonner County Sheriff's Department ejected VP from all *sewer* facilities located on Parcels 1 and 2. However, Valiant did not eject VP from any of the *water* facilities, but it reserved its right to eject VP from the water facilities until certain construction was completed.

Valiant formally responded to VP's motion on April 11, 2017. Valiant noted that it had already undertaken operation of the sewer system. Valiant's managing member testified that it had not and would not eject VP from the water facilities on Parcels 1 and 2 until it had drilled its own wells and constructed any infrastructure necessary to ensure VP's ejectment would not cause an interruption in essential water services.

Despite Valiant's assurances, on April 12, 2017, VP shut off water services to The Idaho Club and to 40 third-party homeowners residing within it. Valiant responded with a motion for a temporary restraining order ("TRO") and preliminary injunction against VP the next day. The motion sought to require VP to continue providing water services until Valiant had drilled its own wells and could provide water services on its own. The district court immediately granted the TRO and set a hearing on the motion for a preliminary injunction.

On April 13, 2017, VP moved to dissolve the TRO. On April 28, 2017, the district court entered its order granting an injunction. The injunction required VP to continue providing water services to all real property serviced thereby until Valiant had drilled its wells and constructed infrastructure necessary to provide water services without the use of the VP wells. The injunction also required Valiant to continue providing sewer services to all real property serviced thereby until VP had constructed infrastructure necessary to provide sewer services to a neighboring development without use of Valiant's sewer lagoon and associated infrastructure. The injunction remains in effect and VP appeals the district court's entry of the TRO and injunction.

## II. ISSUES ON APPEAL

A. Did the district court err in granting summary judgment against VP and adjudging Valiant took free and clear of any right VP claimed for the right to maintain and operate its water and sewer system within the foreclosed lots in The Idaho Club?

B. Did the district court err in declaring the rights and relationships of unknown purchasers at foreclosure without any case or controversy before the district court upon which to enter a declaratory judgment on these issues?

C. Did the district court err by granting a post-judgment temporary restraining order followed by a preliminary injunction against VP?

D. Did the district court err in its cost award against VP?

### III. STANDARD OF REVIEW

When this Court reviews a district court's ruling on a motion for summary judgment, it employs the same standard properly employed by the district court when originally ruling on the motion. Summary judgment is proper when there is no genuine issue of material fact and the only remaining questions are questions of law. This Court liberally construes all disputed facts in favor of the nonmoving party and draws all reasonable inferences and conclusions supported by the record in favor of the party opposing the motion.

*Chandler v. Hayden*, 147 Idaho 765, 768, 215 P.3d 485, 488 (2009) (citations omitted). "When an action will be tried before a court without a jury, the court may, in ruling on the motions for summary judgment, draw probable inferences arising from the undisputed evidentiary facts." *Losee v. Idaho Co.*, 148 Idaho 219, 222, 220 P.3d 575, 578 (2009) (citations omitted). Only conflicting facts must be viewed in favor of a non-moving party. *Id.* "When this Court reviews the denial of a motion for reconsideration following the grant of summary judgment, this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment." *Wickel v. Chamberlain*, 159 Idaho 532, 537, 363 P.3d 854, 859 (2015) (citation and quotation marks omitted).

Questions that are presented to the discretion of a trial court require application of the standard four-part test to this Court's analysis. That is, "whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

## IV. ANALYSIS

**A. The district court did not err in granting partial summary judgment against VP as to priority.**

The district court found there was no genuine issue of material fact that the Valiant Mortgages and redemption deed had priority over any alleged property interest VP had in The Idaho Club. The district court thus granted three of Valiant's dispositive motions: (1) its first motion for summary judgment; (2) its motion for an order of sale; and (3) its third motion for summary judgment. The court also entered a decree of foreclosure on Valiant's behalf after the court trial. VP filed three motions for reconsideration. The district court denied all the motions. The court denied the third motion for reconsideration because it found VP failed to raise a genuine issue of material fact regarding its prescriptive easement and equitable servitude claims:

> In sum, after drawing the most probable inferences from the undisputed evidence properly before the court, this court finds there are no genuine issues of fact for trial on the issue of whether VP's claim of prescriptive easements and equitable servitudes are junior to Valiant's interest in the subject properties.

VP argues that the district court erred in granting summary judgment and failing to grant its motions to reconsider because the court granted foreclosure of property using a different legal description than was contained in the foreclosed mortgages. It also argues that the court erred by granting summary judgment regarding VP's prescriptive easement and equitable servitude claims.

When ruling on a motion for summary judgment, the trial court must determine whether the evidence, when construed in the light most favorable to the nonmoving party, presents a genuine issue of material fact or shows that the moving party is not entitled to judgment as a matter of law. *Kiebert v. Goss,* 144 Idaho 225, 228, 159 P.3d 862, 865 (2007). The moving party bears the burden of proving the absence of material facts. *Id.* Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the non-moving party to show the existence of a genuine issue of material fact. *Id.* A non-moving party must come forward with evidence by affidavit or otherwise that contradicts the evidence submitted by the moving party, and that establishes the existence of a material issue of disputed fact. *Id.*

"[A] nonmoving defendant has the burden of supporting a claimed affirmative defense on a motion for summary judgment." *Chandler*, 147 Idaho at 771, 215 P.3d at 491. "An affirmative defense is [a] defendant's assertion raising new facts and arguments that, if true, will defeat the

plaintiff's or prosecution's claim, even if all allegations in the complaint are true." *Fuhriman v. State, Dep't of Transp.,* 143 Idaho 800, 803, 153 P.3d 480, 483 (2007) (citation and quotation marks omitted). An affirmative defense can be raised for the first time on a motion for summary judgment, provided the "defense was raised before trial and the [non-moving party] was given time to present arguments in opposition." *Id.* at 804, 153 P.3d at 484 (citation and quotation marks omitted).

Valiant submitted its initial motion for summary judgment seeking only partial judgment as to priority. Valiant made clear from the outset that it intended to seek judgment for the actual property encumbered by its mortgages later.[1] Valiant met its initial burden of establishing the absence of a genuine issue of material fact by submitting recorded copies of the Valiant Mortgages, along with VP's quitclaim deeds that it obtained from POBD—which were recorded in Bonner County many years after Valiant's mortgages were recorded. The burden then shifted to VP to produce evidence establishing an issue of fact. *Chandler v. Hayden*, 147 Idaho 765, 769, 215 P.3d 485, 489 (2009). VP failed to produce any evidence contradicting Valiant's claims as to *priority*.

This evidence established that the Valiant Mortgages had priority over VP's recorded property interests because they were recorded first, under Idaho's race notice statute. *Sun Valley Land & Minerals, Inc. v. Burt*, 123 Idaho 862, 866, 853 P.2d 607, 611 (Ct. App. 1993) ("In Idaho, the first recorded conveyances of real property, taken in good faith and for valuable consideration, except leases not exceeding one year, have priority over subsequent purchasers or mortgagees of the same property. I.C. § 55-812."). The trial court did not err in granting the initial motion for summary judgment as to priority.

**B. The district court did not err in granting Valiant's third motion for summary judgment.**

While VP's prescriptive easement and equitable servitude claims were not appropriately addressed by the trial court in its initial order, those issues were fully briefed and argued later, and the court properly considered those claims, as will be set forth below.

1. <u>There was no genuine issue of material fact regarding the existence of VP's alleged prescriptive easement.</u>

---

[1] The trial court granted summary judgment with an expansive order that went beyond the limited relief sought by Valiant. Still, the issues VP raises as to the court's initial order were appropriately addressed by the district court later in the litigation after Valiant filed additional dispositive motions and VP filed three motions to reconsider.

As for its prescriptive easement claim, VP had the burden to show that its use of The Idaho Club property was: (1) open and notorious; (2) continuous and uninterrupted; (3) adverse and under a claim of right; (4) with the actual or imputed knowledge of the owner of the servient tenement; and (5) for the statutory period. *Beckstead v. Price*, 146 Idaho 57, 63, 190 P.3d 876, 882 (2008). The memorandum in support of VP's third motion for reconsideration did not even list these factors and simply stated: "Regarding the prescriptive easement, Villelli's affidavit testimony was that certain of these easements have existed in excess of 20 years. Thus, the reasonable inference to be drawn from this testimony [is] that there is a question of material fact regarding granting Valiant quiet title." Villelli also testified:

> VP, Inc. entered in a Construction and Operating Agreement with [POBD] on June 13, 2006 which addressed construction of extensions to VP's existing water and sewer system by [POBD] and VP's operation of the system. Much of this infrastructure has been in place for over 20 years.

The district court correctly found that this statement was conclusory and unsupported by the evidence and therefore insufficient to overcome summary judgment. *See Stafford v. Weaver*, 136 Idaho 223, 225, 31 P.3d 245, 247 (2001) (finding that "mere conclusory allegations" were not enough to defeat summary judgment). This was because the statement about the twenty-year life of the infrastructure was conclusory. Additionally, the "Construction and Operating Agreement" referenced by Villelli was not attached to his declaration as an exhibit and thus did not create additional facts for the court to consider. Villelli's statement also failed to point to any other evidence to establish the elements necessary to create a prescriptive easement.

Moreover, the Villelli affidavit itself weighed against finding there was a prescriptive easement. Villelli testified that "VP operated the [water and sewer] system *as required*." (Emphasis added). This statement undermines any finding of a prescriptive easement because it shows that VP's operation of the water and sewer system was permissive. *See Fuquay v. Low*, 162 Idaho 373, 379, 397 P.3d 1132, 1138 (2017) (no use can be considered adverse or ripen into a prescriptive easement when the use was presumptively permissive). VP thus failed to raise a genuine issue of material fact on the existence of a prescriptive easement and the district court did not err in granting summary judgment for Valiant on this basis.

2. <u>There was no genuine issue of material fact about the existence of VP's alleged equitable servitude.</u>

VP argued that reasonable inferences could be drawn to determine there was a question of fact about whether the Valiant Mortgages were subject to VP's equitable servitude, i.e.,

11

whether the water and sewer infrastructure was initially included in the sale to POBD and whether Valiant's predecessors in interest knew about this before making their loans. As for this claim, Valiant met its initial burden of establishing the lack of a material issue of fact for trial. VP was then required to set forth the elements of an equitable servitude and explain why there were questions of fact about each element. *Blickenstaff v. Clegg*, 140 Idaho 572, 577, 97 P.3d 439, 444 (2004) ("The non-moving party must submit more than just conclusory assertions that an issue of material fact exists to establish a genuine issue."); I.R.C.P. 56(e)(3).

With regard to equitable servitudes, this Court has stated:

Equitable interests may arise because of the actions of the parties, such as oral representations. . . . [T]his Court [has] established the test relevant to determining if a promise regarding the use of land runs against a successor in interest of the original promisor: 1) whether or not the party claiming the enforceable interest actually has an interest against the original promisor; and 2) if such right exists, whether it is enforceable against the subsequent purchaser.

*W. Wood Invs., Inc. v. Acord*, 141 Idaho 75, 84, 106 P.3d 401, 410 (2005) (internal citations and quotations omitted). "Whether a successor in interest takes the interest subject to the equitable servitude is a question of notice." *Id.* at 85, 106 P.3d at 411. VP argued before the district court that there was a genuine issue of material fact as to these elements by stating:

VP produced evidence that the Third Restated Purchase and Sale Agreement was provided to Barney Ng prior to [REL] making its loan to POBD. This agreement specifically stated that the water and sewer infrastructure upon the lots sold to POBD was not included as part of the sale to POBD. Further, enough evidence exists in the record to draw reasonable inferences that Barney Ng was associated with [REL, Pensco, and MF08] . . . . Thus, the reasonable inference should be drawn that these three related lenders had the same knowledge through Barney Ng prior to making their loans that the water sewer infrastructure were not sold to POBD as part of the sale.

This argument and the facts behind it do not raise a genuine issue of material fact. First, we note that the Third Purchase and Sale Agreement ("PSA"), while part of the record as an attachment to Richard Villelli's February 2015 declaration, was not shown to have been given to Valiant or its predecessor. Thus, with regard to the notice requirement, Villelli stated he only "*understood* R.E. Loans had a copy of the Third Restated [PSA]. . . ." (Emphasis added). Villelli's "understanding" is not evidence and such a statement cannot create a material question of fact. I.R.C.P. 56(c)(4); *Hecla Min. Co. v. Star-Morning Min. Co.*, 122 Idaho 778, 786, 839 P.2d 1192, 1200 (1992) (statements in affidavit of "understanding" between parties were

12

conclusory and did not provide the kind of specific, admissible facts that would either support or prevent entry of summary judgment); *R Homes Corp. v. Herr*, 142 Idaho 87, 93, 123 P.3d 720, 726 (Ct. App. 2005) (an unsubstantiated "understanding" is not evidence sufficient to withstand summary judgment). Villelli's testimony merely showed that he understood that REL had a copy of the agreement—not that he delivered or *knew* REL had a copy. Villelli's testimony did not state the basis for this "understanding" either. Villelli did not testify regarding to whom he provided the second PSA, nor did he testify about any alleged provision in that agreement.

VP argues that the district court erred by not making inferences about Villelli's "understandings" in its favor; however, as the ultimate trier of fact, the court was "entitled to arrive at the most probable inferences based upon the undisputed evidence *properly* before it. . . ." *Seward v. Musick Auction, LLC*, No. 44543-2016, 2018 WL 4472732, at *7 (Idaho Sept. 19, 2018) (emphasis added) (quoting *Borley v. Smith*, 149 Idaho 171, 176–77, 233 P.3d 102, 107–08 (2010) (citations omitted)). The evidence properly before the district court could not establish the link-in-the-chain regarding notice that VP wishes to impute to Valiant.

Second, VP also directs this Court to several pages of alleged undisputed facts in the record to create an issue of material fact regarding both its prescriptive easement and equitable servitude claims. However, VP did not cite to any of this testimony or evidence when it filed its opposition to the partial summary judgment motion, or in its first, second or third motions to reconsider. Instead, VP relied solely upon its prior briefing, which the court had rejected, and one sentence of Mr. Villelli's testimony. These arguments were not made within its oppositions to summary judgment or in its first, second, or third motions for reconsideration; they are made for the first time on appeal.

We decline to consider these facts on appeal when they were not presented to the trial court for its consideration. VP "had the opportunity [before the trial court] to raise additional [facts or arguments]; they failed to do so at their own peril." *Armstrong v. Farmers Ins. Co. of Idaho*, 147 Idaho 67, 72, 205 P.3d 1203, 1208 (2009). This is particularly apt where no jury had been demanded and the trial court was to be the trier of fact. In those circumstances the court permissibly made the most probable inferences from the evidence provided to it. *Losee*, 148 Idaho at 222, 220 P.3d at 578. "The longstanding rule of this Court is that we will not consider issues that are raised for the first time on appeal." *Parsons v. Mut. Of Enumclaw Ins. Co.*, 143 Idaho 743, 746, 152 P.3d 614, 617 (2007) (quoting *Murray v. Spalding,* 141 Idaho 99, 101, 106

13

P.3d 425, 427 (2005)). "We have made an exception for constitutional issues if their consideration is necessary for subsequent proceedings in the case. That exception does not apply here. We therefore decline to address this issue." *Id*. (internal citation omitted).

"[T]he trial court is not required to search the record looking for evidence that may create a genuine issue of material fact; the party opposing the summary judgment is required to bring that evidence to the court's attention." *Esser Elec. v. Lost River Ballistics Techs., Inc.,* 145 Idaho 912, 919, 188 P.3d 854, 861 (2008) (citing *Coeur d'Alene Mining Co. v. First Nat'l Bank of N. Idaho*, 118 Idaho 812, 800 P.2d 1026 (1990)). Thus, the district court did not err in finding against VP as to its equitable servitude claim on the record *properly* before it.

3. <u>The district court did not err in granting the third motion for summary judgment as to the description of Valiant's real property.</u>

After the entry of partial summary judgment on priority, Valiant filed its third motion for summary judgment. This motion sought a judgment establishing the description of the property encumbered by the Valiant Mortgages and redemption deed. The memorandum in support of this motion referenced the third Shafer declaration that identified each parcel of real property encumbered by the Valiant Mortgages and referenced in its redemption deed.

We note that the redemption deed is simply a purported deed issued to an alleged redemptioner in consideration of the payment of delinquent taxes. *Hardy v. McGill*, 137 Idaho 280, 286, 47 P.3d 1250, 1256 (2002). Thus, the redemption deed provided no rights to Valiant independent of its previously perfected security interest through its mortgages. We recently recognized in a companion case, "[a] redemption deed is not a tax deed given by the county upon a sale to a purchaser; it is a deed issued to a redemptioner in consideration of the payment of delinquent taxes." <u>*Valiant Idaho, LLC v. JV L.L.C.*</u>, No. 44584, 2018 WL 4959105, at \*4 (Idaho Oct. 15, 2018) (quoting *Hardy*, 137 Idaho at 286, 47 P.3d at 1256). We therefore held that "under [Idaho Code] section 63-1010, a redemption deed *does not* convey any additional right, title, interest, or lien to the redemptioner. Instead, it simply extinguishes the rights that the county held to the property under its tax deed." <u>*Id.*</u> at \*5 (emphasis in original). Thus, the parties' and the court's reference to "foreclosing" the redemption deed was erroneous. Even so, the court properly recognized the relief sought by Valiant in "foreclosing" the redemption deed was to insure that the amount paid for the past-due taxes was added to the amount owed to Valiant by POBD.

14

The district court granted Valiant's third motion for summary judgment, in part because the third Shafer declaration remained uncontroverted. There was therefore no genuine issue of material fact regarding the legal description of the real property encumbered by the Valiant Mortgages. The district court also found that the third Shafer declaration did not create a genuine issue of material fact because it merely clarified—and did not contradict—Shafer's prior two declarations submitted to the court:

> No evidence has been submitted to dispute Mr. Shafer's testimony that the [REL] Mortgages cover[ed] 186 lots, the Pensco Mortgage cover[ed] 155 lots, and the MF08 Mortgage cover[ed] 155 lots. In the absent [sic] of contrary testimony, Mr. Shafer's third declaration remains undisputed, and the fact that the third Declaration was more specific than the previous Declarations does not create a genuine issue of material fact.

VP argues that the district court erred in granting Valiant's third motion for summary judgment because the third Shafer declaration: (1) contradicted the prior Shafer declarations; and (2) did not match the legal descriptions in the Valiant Mortgages. We hold that the district court did not err in granting Valiant's third motion for summary judgment.

a) The differences between the three Shafer declarations did not create a genuine issue of material fact.

As noted above, Shafer made three declarations that were filed with the district court. The first Shafer declaration was filed in support of Valiant's motion for final judgment. Exhibit five of this declaration was a legal description of all the property encumbered by Valiant—based on Shafer's review of all three mortgages and the redemption deed. Exhibit five identified 186 parcels that Valiant sought to foreclose on, but did not identify the individual mortgages that encumbered each of those parcels. The second Shafer declaration was filed in support of Valiant's motion for an order of sale of real property. The legal description provided in this declaration was the same as the first declaration except it was simply renamed as the "Idaho Club's Legal Description." The legal descriptions in both declarations left unspecified which mortgages encumbered each parcel. The declarations simply stated: "The real property legally described in Exhibit 5 accurately describes the real property described in the Valiant Encumbrances . . . which Valiant is entitled to foreclose."

Then, the third Shafer declaration was filed in support of Valiant's motion to amend the decree of foreclosure. This declaration specified the individual parcels encumbered by each mortgage and identified in the redemption deed. This declaration clarified that although every

15

one of the 186 parcels was encumbered by at least one of Valiant's mortgages—31 of the parcels were only encumbered by the REL mortgage—not by the Pensco or MF08 mortgages assigned to Valiant.

Citing *Capstar Radio Operating Co. v. Lawrence*, 153 Idaho 411, 283 P.3d 728 (2012), VP argues that the third Shafer declaration created a genuine issue of material fact as to the legal description of the property because it was markedly different than Shafer's first two declarations. The *Capstar* decision is of no help to VP here.

In *Capstar* the district court granted summary judgment in favor of Capstar on the existence of an easement over neighbors' land. 153 Idaho at 416, 282 P.3d at 733. This Court reversed the district court, in part, because testimony from witnesses in the case varied in a significant way about the open and continuous use of the easement in question. Capstar's predecessor-in-interest, Funk submitted an affidavit testifying that "we continuously utilized the existing road . . . to access our property . . . without interference." *Id.* at 418, 283 P.3d at 735. Yet in a deposition Funk also testified that the "uses of the property were huckleberry picking and shooting and that this occurred on an infrequent basis. . . ." *Id.* Similarly, another party in Capstar's chain of title, Rook, first testified that the road was "visible and in use" by the Funks at the time Rook's company purchased the property. *Id.* Even so, Rook later testified that he could not verify whether Funk ever used the roadway to access the property. *Id.* This Court held that such contradictory testimony created a genuine issue of material fact about whether the use of the easement road was apparent and continuous. *Id.* at 419, 283 P.3d at 736.

In this case, the district court initially agreed with VP's *Capstar* argument and granted a motion for reconsideration that vacated the prior grant of Valiant's motion for final judgment. However, the district court ultimately did not find the *Capstar* argument persuasive and it granted Valiant's third motion for summary judgment:

> The third Declaration of C. Dean Shafer . . . identif[ies] which individual parcels are encumbered by each mortgage. This additional information does not change or alter Mr. Shafer's testimony, much less create an inconsistency among his declarations. Mr. Shafer's third Declaration is simply more specific than his first two Declarations.
> . . . .
>
> [T]he court finds that NIR and VP's reliance on *Capstar Radio Operating Company v. Lawrence*, 153 Idaho 411, 283 P.3d 728 (2012) is misplaced, as that case is distinguishable on its facts. But even assuming *arguendo* that there is a

16

dispute regarding the internal consistency of Mr. Shafer's Declarations, this dispute fails to create a genuine issue of material fact because [the three defendants] have not offered any evidence to support their arguments that Mr. Shafer's testimony is inaccurate and have failed to offer any evidence which contradicts Mr. Shafer's testimony. In sum, there is no dispute as to the legal description of the property each mortgage encumbers and Valiant is entitled to summary judgment on this issue.

We agree with the district court's analysis. Unlike in *Capstar*, there were no inconsistencies in the Shafer declarations. The first declaration simply stated the "real property legally described in Exhibit 5 accurately describes the real property described in the Valiant Encumbrances . . . ." The first two Shafer declarations *did not* claim that every mortgage encumbered each parcel. The third Shafer declaration merely clarified which mortgages encumbered which parcel of The Idaho Club. Thus, unlike in *Capstar*, there was no inconsistency within Shafer's declarations to preclude summary judgment.

VP also cites a portion of the third declaration in which Shafer admits he gave Valiant's counsel incorrect advice. Despite this admission, the *evidence* submitted by Shafer within his declarations to the court was not inconsistent. The third declaration continued to state that all 186 lots were encumbered—it simply specified which mortgages encumbered each individual lot—something the prior two declarations did not specify. Such clarifications did not create a genuine issue of material fact.

b) VP failed to show a genuine issue of material fact regarding the description of the Valiant Mortgages.

VP next argues there were genuine issues of material fact because the Shafer legal description did not match the Valiant Mortgages and redemption deed. The Schafer declarations alleged 186 parcels were encumbered by Valiant. Schafer's testimony was based on his expert opinion, after examining the Valiant Mortgages and redemption deed. Despite Shafer's expert opinion, VP claimed that Parcels 1 and 2 were not covered by any of the Valiant Mortgages. The district court admonished VP several times that it needed to submit an affidavit or declaration explaining any alleged inaccuracies within the Shafer declarations. VP was made aware of this requirement by the district court on June 23, 2015:

If the defendants wanted to dispute the legal description set forth in the Declaration of C. Dean Shafer, the proper mechanism was to file an opposing affidavit setting forth facts to the contrary. Having failed to do so, the Declaration

17

of C. Dean Shafer stands on the record uncontroverted as to the issue of the proper legal description.

VP was again made aware of this requirement by the district court on July 21, 2015:

> The defendants have made numerous arguments in open court that Valiant's legal description does not match the legal description in various other real estate documents in this case.[ ] However, such arguments alone are not evidence, and in the absence of an opposing affidavit "set[ting] forth specific facts showing that there is a genuine issue for trial," I.R.E. 56(e), this Court upholds its earlier decision granting Valiant's Motion for Entry of Final Judgment, and finds there is no genuine issue of fact for trial as to the legal description set forth in Exhibit 5 to the Shafer Declaration.

Despite these two admonishments, VP failed to file an affidavit or declaration disputing the accuracy of the Shafer declarations in its opposition to Valiant's third motion for summary judgment. VP simply maintained its conclusory allegations that Parcels 1 and 2 were not covered by any of the Valiant Mortgages, with no supporting evidence. The district court thus granted Valiant's third motion for summary judgment on the description of the property because VP failed to submit any evidence to refute Shafer's description.

> Idaho Rule of Civil Procedure 56(e) states:
>
> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1)  give an opportunity to properly support or address the fact;
>
> (2)  consider the fact undisputed for purposes of the motion;
>
> (3)  grant summary judgment if the motion and supporting materials, including the facts considered undisputed, show that the movant is entitled to it; or
>
> (4)  issue any other appropriate order.

Because VP failed to refute the accuracy of the Shafer declarations with any evidence outside its conclusory allegation, the district court appropriately considered the description in the Shafer declarations undisputed and granted summary judgment. If VP wanted to dispute the accuracy of this description, it should have followed the district court's forewarnings and filed an opposing affidavit or declaration under Idaho Rules of Civil Procedure 56(c) and 56(e). VP's having failed to do so in the trial court, there is no genuine issue of material fact as to the legal description.

18

**C. VP waived its right to challenge the second decree of foreclosure on appeal.**

After trial, the district court entered its second foreclosure decree. Section (aa) of the foreclosure decree stated:

> Pursuant to the Valiant Mortgages, should POBD or its successor or assigns be in possession of or occupy any portion of The Idaho Club Property or improvements thereon at the time of the foreclosure sale, and should said occupant fail to deliver possession of said Parcel(s) to Valiant, said occupant shall immediately become the tenant of the purchaser at such sale, which tenancy shall be a tenancy from day-to-day, terminable at the will of the landlord, at a rental per day based upon the value of the Parcel and improvement, such rental to be due daily to the purchaser.

VP argues that Section (aa) of the foreclosure decree is invalid because it affects the rights of "unknown purchasers." However, VP failed to raise this issue before the district court and it has therefore waived this issue on appeal. VP did not make any written objection when the foreclosure decree was issued. It also failed to make any written argument regarding the validity of Section (aa) when it filed its opposition to Valiant's motion to enforce the foreclosure decree. When granting Valiant's motion to enforce, the district court discussed the three issues VP raised in its memorandum in opposition to the motion to enforce. None of these three issues referenced the now alleged infirmity with Section (aa) because VP did not make this argument before the district court. VP is now asking this Court to find that the district court erred in not considering an issue that it raises for the first time on appeal. We decline to do so. *State v. Gertsch,* 137 Idaho 387, 395, 49 P.3d 392, 400 (2002) ("The longstanding rule of this Court is that we will not consider issues that are presented for the first time on appeal.") (quoting *State v. Robbins,* 123 Idaho 527, 529, 850 P.2d 176, 178 (1993)).

**D. The district court did not err in granting Valiant's temporary restraining order and injunction.**

On April 28, 2018, the district court entered an injunction against VP that stated in part:

> Until such time as Valiant has drilled its own groundwater wells and constructed all the necessary infrastructure to isolate and provide water service [to] the Valiant Parcels without the use of the VP Wells, VP, and its agents, servants and employees are ordered to continue to provide water services that were being provided to the real properties and/or property owners within *The Idaho Club* before being shut off on April 12, 2017. . . . This Order is intended to and shall ensure that VP will not take any action to discontinue providing water services, including, but not limited to, severing or shutting off pipes, wells, fire

protection services, and/or any other water system infrastructure within *The Idaho Club.*

(Emphasis in original).

This injunction was ordered under Idaho Appellate Rule 13(b)(10), which allows the district court to "[m]ake any order regarding the use, preservation or possession of any property which is subject of the action on appeal." VP does not argue that the district court abused its discretion in granting this injunction. VP argues that the district court's injunction "exceeded the scope" of Idaho Appellate Rule 13(b)(10):

> [T]he district court's injunction then *exceeded the scope* of I.A.R. 13(b)(10). It ordered VP provide water services without any contractual basis to do so. Valiant had no customer service agreement with VP. It also required such services to continue until Valiant drilled its own wells, which time frame was not tied to pendency of appeal. Neither of these provisions of the district's injunction were proper under I.A.R. 13(b)(10) because these requirements were unrelated to the use, preservation or possession of the property which was the subject of the action during the pendency of the appeal.
>
> Similarly, the district court did not have the power to order that Valiant could collect all [the] sewer fees [it] owed VP pursuant to its customer service contracts. This requirement was unrelated to the use or possession of the property during the pendency of the appeal.

(Emphasis added). "[T]he issue of whether a district court has subject matter jurisdiction is a question of law, over which we exercise free review." *Slavens v. Slavens*, 161 Idaho 198, 201, 384 P.3d 962, 965 (2016). Whether an injunction was improvidently granted is subject to our review under an abuse of discretion standard. *Hayden Lake Fire Prot. Dist. v. Alcorn*, 141 Idaho 388, 405, 111 P.3d 73, 90 (2005), *overruled on other grounds by Farber v. Idaho State Ins. Fund*, 152 Idaho 495, 272 P.3d 467 (2012).

Here, the district court (in its discretion) found that requiring VP to continue providing water services was necessary for the preservation of The Idaho Club because VP's termination of the water services risked significant damage to the property. VP makes no argument in its briefing that issuing the injunction was an abuse of discretion. Failing to demonstrate "that an abuse of discretion occurred under any part of the test applied by this Court . . . is fatal to [an] argument" that the court abused its discretion. *Green River Ranches, LLC v. Silva Land Co.*, 162 Idaho 385, 392, 397 P.3d 1144, 1151 (2017). Thus, the sole question is whether the court exceeded its jurisdiction in doing so.

20

The injunction required VP to "continue to provide all water services that were being provided to the real properties and/or property owners within The Idaho Club before being shut off on April 12, 2017. . . ." The injunction also allowed VP to "charge existing and new customers who reside within the Valiant parcels for water services at The Idaho Club under the terms of existing water service agreements and in accordance with applicable Idaho law. . . ." Thus, the injunction had the effect of preserving the status quo until "such time as Valiant has drilled its own groundwater wells and constructed all the necessary infrastructure to isolate and provide water service to the Valiant [l]ots without use of the VP [w]ells. . . ." The district court had authority to enter this order under I.R.C.P. 62(c). *See Payne v. Skaar*, 127 Idaho 341, 347, 900 P.2d 1352, 1358 (1995) (district court had jurisdiction to enter an order modifying an injunction during appeal); *Cf. Wolford v. Montee*, 161 Idaho 432, 442, 387 P.3d 100, 110 (2016) (an injunction was properly issued after a final judgment had been entered under prior iteration of I.R.C.P. 65(e)(3)).

Pursuant to these authorities, the district court acted properly "regarding [the] use, preservation, or possession," Idaho Appellate Rule 13(b)(10), of the property during this appeal. For these reasons, we hold the district court did not exceed its jurisdiction under Idaho Appellate Rule 13(b)(10) by issuing its injunction.

## E. The district court's grant of discretionary costs is vacated.

On August 22, 2017, the district court issued its "Memorandum Decision Order Awarding Costs and Attorneys' Fees to Valiant Idaho, LLC." The district court found Valiant was entitled to costs as a matter of right as the prevailing party under Idaho Rule of Civil Procedure 54(d)(1)(C):

> Rule 54(d)(1)(A) and (C) of the Idaho Rules of Civil Procedure grant the prevailing party in a civil matter certain costs "as a matter of right." Valiant prevailed in the Valiant Foreclosure against the claims and affirmative defenses raised by JV, NIR and VP in motion practice and at trial. As such, Valiant is entitled to an award of these costs. . . . These include certain court filing fees, service of process fees, deposition and transcript fees, witness fees, witness travel expenses, preparing of trial exhibits, and expert witness fees that Valiant incurred in this case.

The district court held that Valiant was entitled to costs as a matter of right in the amount of $9,014.99, which was apportioned between NIR, JV and VP. VP suggests that it joins NIR's opening brief as though set forth in full, "[d]ue to page limitations" (both parties are represented

21

by the same attorney). NIR challenged both costs as a matter of right and discretionary costs in its briefing. *See* 2018 WL 4927560, at *3. Even so, VP, to "comply with the requirement that [its] brief contain authority and legal argument," provided a "summary of the argument in which it join[ed]." That summary did not include any argument as to costs as a matter of right. VP thus has waived[2] any challenge to the amount awarded by the district court for those costs ($3,380.62) by not directly addressing that issue in its briefing. *See Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010).

     1.  <u>The district court perceived its award of costs as a matter of discretion.</u>

     VP asserts that the district court did not perceive its award of costs as a matter of discretion. Although the district court did not explicitly state this was a discretionary matter—it is clear from the record that the district court recognized the award of discretionary cost as one of discretion. *See Hall v. State*, 151 Idaho 42, 50, 253 P.3d 716, 724 (2011) ("It is clear from the record that the district court recognized the issue of post-verdict juror contact as one of discretion."). The district court clearly separated its analysis on costs as a matter of right and discretionary costs. The district court also stated that it was "authorize[d]" to award discretionary costs under Idaho Rule of Civil Procedure 54—not that it had to do so. Furthermore, citing Rule 54(d)(1)(D), the district court referred to these costs as "discretionary costs" throughout its memorandum decision and determined that certain discretionary costs were "necessary and exceptional, reasonably incurred, and *should* in the interest of justice be assessed against [VP]." (Emphasis added). Thus, although the district court did not make an explicit statement that the grant of costs was a discretionary matter—it viewed this matter as one of discretion.

     2.  <u>The district court acted within the boundaries of its discretion.</u>

     In *Richard J. & Esther E. Wooley Trust v. DeBest Plumbing, Inc.*, this Court held that the district court acted within the boundaries of its discretion because its order "state[d] its authority for awarding the fees under I.R.C.P. 54(d)(1)(D). . . ." 133 Idaho 180, 187, 983 P.2d 834, 841 (1999). Similarly here, the district court found its authority for awarding fees under Rule 54(d)(1)(D). The district court then went on to make express findings as required by Rule

_____

[2] This could be viewed as problematic by the district court on remand. Costs as a matter of right must be revisited by the court relative to the court's formulaic analysis as set forth in *North Idaho Resorts,* 2018 WL 4927560, at *4. The judgment for costs as a matter of right as to VP is final. Thus, even if VP's proportionate share of the costs as a matter of right is altered by the district court's review of those costs as directed in *North Idaho Resorts*, that change will not affect the amount VP owes for those costs, which is previously established.

54(d)(1)(D). The district court thus acted within its boundaries of discretion in awarding discretionary costs.

3. <u>The district court abused its discretion in the way the court applied its formula to the discretionary costs award in this case</u>.

As for discretionary costs, Valiant argues that VP has not sufficiently briefed the issues in that regard either. VP did argue the general principle that the court abused its discretion by failing to acknowledge its discretion, and by failing to act within the boundaries of its discretion in reaching its decision. Any party opposing an award of discretionary costs bears the burden of demonstrating an abuse of this discretion by the trial court. *Great Plains Equip., Inc. v. Nw. Pipeline Corp.*, 136 Idaho 466, 474, 36 P.3d 218, 226 (2001) (internal citation omitted); I.R.C.P. 54(d)(1)(C), (D). We determine that VP's argument is sufficient to challenge the district court's discretionary cost determination on appeal.

In reviewing whether the district court abused its discretion, this Court applies the following four-part test:

> Whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.

*Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). The district court found Valiant was entitled to discretionary costs as the prevailing party under Idaho Rule of Civil Procedure 54(d)(1)(D):

> The Court finds that the scope and complexity of this litigation resulted in necessary and exceptional costs which Valiant should be awarded in the interest of justice, because these are costs which Valiant had to expend to fully litigate this matter but which are not contemplated by the Idaho Rules of Civil Procedure as a matter of right.

We first note that we have addressed the issues presented here in *North Idaho Resorts*, 2018 WL 4927560, at *5–9. That case contains a detailed analysis of the cost-related issues presented here that we will not restate in this opinion. We rely on *North Idaho Resorts* in support of our conclusions reached here.

23

The district court awarded costs in the Valiant foreclosure against the three defendants on a percentage basis as follows:

1. NIR is responsible for 0.25 of $41,479.69=$10,369.93
2. JV is responsible for 0.375 of $41,479.69=$15,554.88
3. VP is responsible for 0.375 of $41,479.69=$15,554.88

The only explanation noted by the district court for this conclusion is that the court "is authorized by Idaho Rule of Civil Procedure 54 to apportion costs between the defendants." The authority that the court relied on only allows for the apportionment when "a party to an action prevailed in part and did not prevail in part. . . ." I.R.C.P. 54(d)(1)(B). Thus, by apportioning costs according to its formula, *without providing any additional reasoning*, the court failed to apply properly the applicable legal standard while exercising its discretion. *See Hayden Lake Fire Prot. Dist. v. Alcorn*, 141 Idaho 307, 314, 109 P.3d 161, 168 (2005) (trial court was required on remand to make express findings *why* certain discretionary costs were or were not allowed). *See also North Idaho Resorts,* 2018 WL 4927560, at *4.

We recognize that trial courts need not review requested costs "item by item." *Puckett v. Verska*, 144 Idaho 161, 170, 158 P.3d 937, 946 (2007). Nor do we hold that trial courts cannot assess costs to non-prevailing co-defendants in a proportionate way, based on their respective responsibilities for those costs; however, when a court does so, it must provide the basis for its reasoning, particularly stating *why* the costs should be apportioned among the adverse parties in the manner designated by the court.

The court's order here failed to state any reasons, other than intimating that because JV and VP participated equally in litigating the issues before the court, including defending the case in a court trial, JV and VP shared 75% of the cost-responsibility for the litigation. We vacate the court's discretionary cost judgment in this regard, remanding for an opportunity for the district court to explain why JV and VP bear the responsibility for 75% of the costs awarded here, particularly when POBD, the party which had judgment entered against it for over $21 million, was ordered to pay a much smaller amount of such costs. We recognize that POBD did not litigate the case at trial, and that costs as a matter of right that are linked to the trial are rightly the responsibility of the parties who participated in the trial; however, the rationale supporting such a conclusion on discretionary costs needs to be spelled-out, particularly given our holding in *North Idaho Resorts*.

24

4. The district court's cost award is vacated.

We held in *North Idaho Resorts* that the discretionary costs awarded here must be revisited upon remand. 2018 WL 4927560, at *8–9. Since we have vacated and remanded the award of costs in *North Idaho Resorts* for further review, we likewise vacate and remand for similar reasons regarding the district court's discretionary cost determination here, including those costs relating to the litigation guarantee. *Id*. at *8–9. Recognizing that the trial court has the absolute right to revisit the discretionary cost award upon remand based on our holdings here and in *North Idaho Resorts*, *id.*, and *Valiant v. JV LLC*, No. 44584, 2018 WL 4959105, at *5 (Idaho Oct. 15, 2018), the district court will have to review whether the litigation guarantee was a necessary and exceptional cost for VP. The extent that the interests of justice support an award of that cost against VP is a matter for the court to determine and explain upon remand.

**F. Valiant is not entitled to attorney fees on appeal.**

"An award of attorney fees under Idaho Code section 12-121 is not a matter of right to the prevailing party, but is appropriate only when this Court, in its discretion, is left with the abiding belief that the case was brought, pursued, or defended frivolously, unreasonably, or without foundation." *Budget Truck Sales, LLC v. Tilley*, 163 Idaho 841, 850, 419 P.3d 1139, 1148 (2018) (internal quotations and citation omitted). "Such circumstances exist when an appellant has only asked the appellate court to second-guess the trial court by reweighing the evidence or has failed to show that the district court incorrectly applied well-established law." *Snider v. Arnold*, 153 Idaho 641, 645–46, 289 P.3d 43, 47–48 (2012). Even so, "[w]hen deciding whether attorney fees should be awarded under I.C. § 12–121, the entire course of the litigation must be taken into account and if there is at least one legitimate issue presented, attorney fees may not be awarded even though the losing party has asserted other factual or legal claims that are frivolous, unreasonable, or without foundation." *Budget Truck Sales*, 163 Idaho at 850, 419 P.3d at 1148 (quoting *Michalk v. Michalk*, 148 Idaho 224, 235, 220 P.3d 580, 591 (2009)).

In this case, the district court refused to award attorney fees. It took this Court's ruling in *Idaho Military Historical Society, Inc. v. Maslen* as its guide when it determined, viewing the entire course of the litigation, "that attorney fees will not be assessed if there is a legitimate, triable issue of fact." 156 Idaho 624, 632, 329 P.3d 1072, 1080 (2014) (quoting *Nampa & Meridian Irr. Dist. v. Washington Fed. Sav.*, 135 Idaho 518, 524–25, 20 P.3d 702, 708–09 (2001)). In its memorandum decision and order, the district court held:

. . . In the Valiant Foreclosure, all the defendants asserted some legal theories they could not prove. One or more of the defendants made some factual claims that were unsupportable. The Court does not find that those claims were known by the defendants to be unsupportable. The issue at trial . . . arose out of a legitimate factual claim by the defendants that the loans had been satisfied. The trial resulted in the production by Valiant of evidence that clearly and convincingly showed that the loans were not satisfied, and the amounts still due thereunder.

Though *some* of the claims and defenses raised by VP . . . lacked any factual or legal basis, viewing the entire course of the litigation, this Court does not believe that VP . . . defended this action frivolously, unreasonably, or without foundation.

(Emphasis in original).

Valiant argues on appeal that VP merely invites this Court to second-guess the district court's well-reasoned decisions. Valiant's argument is not entirely without merit. Yet analyzing all the issues here, it is not apparent that VP pursued this appeal without foundation. VP argued, among other things, that issues of fact precluded the court's summary judgment determinations below. As Valiant itself recognizes in the opening sentence of its factual and procedural history, "[t]he underlying case is an exceptionally complex real estate foreclosure and lien priority lawsuit. . . ." The inherent complexity of the case and the entanglements of multiple defendants, multiple summary judgments and several motions, led to complex legal issues which we have now addressed. The trial court was satisfied that, while not prevailing on certain theories, VP did not pursue its litigation frivolously. For similar reasons, we conclude that VP's claims on appeal were not frivolous or merely a request to "second guess" the trial court.

In addition, we have vacated and remanded this case for the district court to revisit its award of discretionary costs awarded against VP. In that regard, VP prevailed in part in this appeal. Valiant has thus failed to establish, and the record does not show, that VP brought or pursued this appeal in an entirely unreasonable or frivolous manner. Thus, under the authority of Idaho Code section 12-121, we decline to award fees to Valiant.

## VI. CONCLUSION

We affirm the judgment of the district court except as to the issue of discretionary costs, which issue is <u>vacated</u> and <u>remanded</u> for further action consistent with this Opinion.

Chief Justice BURDICK, Justices HORTON, BRODY and Justice *pro tem* SCHROEDER, CONCUR.

26