**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51859**

| | |
|---|---|
| F&G TIMBERLANDS LLC, an Idaho limited liability company, | ) ) | Filed: November 3, 2025 |
| Plaintiff-Respondent, | ) ) ) | Melanie Gagnepain, Clerk |
| v. | ) ) | THIS IS AN UNPUBLISHED |
| MEGAN and MATTHEW DOTSON, husband and wife; ROBERT and JULIE WILLIAMS, husband and wife, | ) ) ) ) | OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| Defendants-Appellants. | ) ) ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Susie Jensen and Hon. Barry McHugh, District Judges.

Amended judgment, <u>affirmed</u>; order for attorney fees, <u>vacated</u> and <u>remanded with instructions</u>.

James, Vernon & Weeks, P.A.; Susan P. Weeks, Coeur d'Alene, for appellants. Susan P. Weeks argued.

Lyons O'Dowd, PLLC; Megan S. O'Dowd, Coeur d'Alene, for respondent. Megan O'Dowd argued.

---

TRIBE, Judge

Megan Dotson, Matthew Dotson, Robert Williams, and Julie Williams appeal from the district court's amended judgment affirming the validity and binding effect of an easement, declaring the easement's width and the location of the easement, declaring and affirming that the dominant estate is all property owned by F&G Timberlands LLC (F&G), and declaring the easement as binding on the Dotsons and Williamses. The Dotsons and Williamses also appeal from the district court's order granting attorney fees to F&G. We affirm the amended judgment; however, we vacate the order granting attorney fees and remand with instructions.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

F&G owns a large parcel of land. The managing member of F&G, Steven Godde, provided an option contract, which was exercised by Holly and Steven Nemback in 2018. The Nembacks exercised an option to purchase approximately twenty acres from F&G. As part of the purchase agreement, the Nembacks granted an easement over and across their property to F&G, which was documented in a Grant of Easement (Grant). The Grant details the placement of the easement as it relates to the property formerly owned by the Nembacks, which is labeled "Parcel 1." The Grant refers to a document, Exhibit A, which provides a description of Parcel 1 and Parcel 2.[1] In subsection B, the Grant creates a description for the term "Grantee Gross Property" to mean the "numerous of tracts of land adjacent, adjoining or contiguous by virtue of other Grantee owned tracts, thereto including combinations or subdivisions of Grantee land ownership, now owned or hereinafter acquired." In subsection C(1), the Grant describes to whom the easement applies and states that the Nembacks grant the easement to F&G "for use and benefit of the Grantee, Grantee's successors and assigns, the Grantee Gross Property and any future owners and their heirs . . . a perpetual easement for ingress and egress . . . and to convert the Easement Premises to a public right-of-way or road." In subsection C(3), entitled "Appurtenances," it details that the easement shall "run with Parcel 1 . . . for the benefit of and an appurtenance to Grantee Gross Property and for other property now owned or later acquired by Grantee." The Grant also references Exhibit B as a legal description of the easement. Exhibit B's final sentence states: "The southern, western and northern boundary lines of said 70 foot strip being coincidental to the boundary lines of the adjoining real property owned by Grantee, and the dominant estate hereunder." Exhibit C is a diagram that generally depicts the easements.

The Nembacks later sold approximately twenty acres to the Williamses. The Williamses then quitclaimed ten of their acres to the Dotsons. F&G filed a complaint against the Dotsons and Williamses seeking a declaratory judgment to quiet title and for injunctive relief for use of the easement. F&G alleged that the Dotsons disputed the location of the easement, removed flagging

---

[1] In its memorandum decision and order on F&G's motion for summary judgment, the district court referred to Parcel 1 and Parcel 2 as the "Subject Property."

2

and surveying markers, and placed a "storage-like container" that hindered F&G's use of the easement.

In their answer, the Dotsons and Williamses admitted that the Dotsons set a "removable storage container" in the easement, and they asserted several affirmative defenses. F&G filed a motion for summary judgment supported by declarations. The Dotsons and Williamses moved to strike portions of the declarations and filed a memorandum in opposition to F&G's motion for summary judgment supported by declarations. F&G then moved to strike portions of the declarations filed by the Dotsons and Williamses. The district court granted F&G's motion for summary judgment. Thereafter, the district court entered judgment in favor of F&G. The Dotsons and Williamses filed a motion for reconsideration of the district court's grant of summary judgment and final judgment. The district court denied the motion for reconsideration but entered an amended judgment clarifying that the original judgment granted F&G relief on the claims for declaratory judgment and quiet title and that the claim for injunctive relief was dismissed.

F&G requested attorney fees and costs, which the district court granted, ruling that the Dotsons' and Williamses' argument that the easement was void for lack of consideration was frivolous. The Dotsons and Williamses sought reconsideration of the award of attorney fees, which the district court denied. The Dotsons and Williamses appeal.

## II.

### STANDARD OF REVIEW

On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct. App. 1986). Summary judgment is proper if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Idaho Rule of Civil Procedure 56(c). The movant has the burden of showing that no genuine issues of material fact exist. *Stoddart v. Pocatello Sch. Dist. No. 25*, 149 Idaho 679, 683, 239 P.3d 784, 788 (2010). The burden may be met by establishing the absence of evidence on an element that the nonmoving party will be required to prove at trial. *Dunnick v. Elder*, 126 Idaho 308, 311, 882 P.2d 475, 478 (Ct. App. 1994). Such an absence of evidence may be established either by an affirmative showing with the moving party's own evidence or by a

3

review of all the nonmoving party's evidence and the contention that such proof of an element is lacking. *Heath v. Honker's Mini-Mart, Inc.*, 134 Idaho 711, 712, 8 P.3d 1254, 1255 (Ct. App. 2000). Once such an absence of evidence has been established, the burden then shifts to the party opposing the motion to show, via further depositions, discovery responses or affidavits, that there is indeed a genuine issue for trial or to offer a valid justification for the failure to do so under I.R.C.P. 56(d). *Sanders v. Kuna Joint Sch. Dist.*, 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct. App. 1994). Disputed facts and reasonable inferences are construed in favor of the nonmoving party. *Castorena v. Gen. Elec.*, 149 Idaho 609, 613, 238 P.3d 209, 213 (2010). This Court freely reviews issues of law. *Cole v. Kunzler*, 115 Idaho 552, 555, 768 P.2d 815, 818 (Ct. App. 1989).

## III.

## ANALYSIS

The Dotsons and Williamses raise several arguments on appeal. First, they argue that the district court erred in considering the declarations of Chad Johnson and Godde when determining the parties' intent about the easement location "[c]ommencing at the approach of Whitlaw [*sic*] Road." Second, they argue that the district court erred in finding that the dominant estate terms were unambiguous. Third, they argue that the district court erred by applying incorrect rules of contract construction. Fourth, they argue that the easement agreement terms were ambiguous as to the easement location. Finally, the Dotsons and Williamses argue that the district court erred in awarding attorney fees to F&G pursuant to Idaho Code § 12-121. We address each argument below.

### A.    Declarations

The Dotsons and Williamses argue that the district court erroneously considered two of the declarations filed by F&G. The trial court has broad discretion in determining the admissibility of testimonial evidence. A decision to admit or deny such evidence will not be disturbed on appeal absent a clear showing of abuse of that discretion. *Mac Tools, Inc. v. Griffin*, 126 Idaho 193, 199, 879 P.2d 1126, 1132 (1994).

#### 1.    Johnson's declaration

The Dotsons and Williamses argue that Johnson's declaration should not have been considered because his testimony was not proper expert witness testimony, was conclusory, was not based on personal knowledge, and supplanted the district court's function to determine

disputed issues. Johnson's declaration addressed what he opined was the parties' intent at the time the easement was granted regarding the point of beginning for the commencement of the easement upon the Subject Property. The Dotsons and Williamses argue that Johnson did not draft the easement agreement, did not have conversations with the drafters about the parties' intent, and his position as a licensed surveyor would not help him identify the intent of the parties when the easement agreement was drafted. As a result, Johnson had no personal knowledge regarding the parties' intent. The Dotsons and Williamses also argue that Johnson's declaration was conclusory.

A witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Idaho Rule of Evidence 702. The district court considered Johnson a qualified expert who was "entitled to provide his opinion regarding the interpretation of the legal description contained in Exhibit B in conjunction with the Record of Survey." Johnson's declaration asserts that he is and has been a "licensed surveyor with the State of Idaho Board of Licensure of Professional Engineers and Professional Land Surveyors since June 10, 1999." Johnson avers that, in preparing his opinion for the declaration, he "communicated with Title Officer Michelle Jirava of Flying S Title & Escrow. . . . [and] performed . . . title research (including searching for surveys of record, vesting deeds and related information)." Johnson also avers that he is "personally familiar" with and has visited the Subject Property. In section 15.d of his declaration, Johnson opines that the language "approach of Whitlaw Road" refers to the "driveway approach connecting Whitlaw Road to the adjacent property as shown in the Record of Survey" because the "survey was completed in April of 2021 and does not show any other constructed approach." In section 15.h of his declaration, Johnson states that the "Easement commences at the as-built location of the Whitlaw approach shown in the survey"; and in section 15.j, he states that the "only reasonable interpretation of the legal description contained in Exhibit B is that the Easement was intended to commence at the as-built location of the Whitlaw approach as shown in the record of survey."

As a preliminary matter, we note that the objections to Johnson's opinions are conclusory statements. For example, the Dotsons and Williamses argue that Johnson's opinions did not comport with the Idaho Rules of Evidence for expert witness testimony and "supplanted the trial

5

court's function to hear and determine disputed issues of material fact regarding the parties' intentions regarding the easement location," and his status as a licensed surveyor "did not assist in determining a fact at issue in the litigation." These conclusory assertions are not supported by argument. A party waives an issue on appeal if either argument or authority is lacking. *Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997). Consequently, the Dotsons and Williamses have waived these arguments on appeal.

However, even considering the Dotsons' and Williamses' assertions on the merits, the assertions still fail. Idaho Rule of Evidence 702 permits an expert to use their specialized knowledge and provide opinion evidence to assist the trier of fact. Johnson's declaration details his experience, his expert understanding of the term "approach," and how that term applies to the exhibits depicting the easement and the dominant property. The declaration further includes Johnson's opinions (informed by his expertise) that there is only one reasonable interpretation of the intent of the parties vis-à-vis the easement access.[2] Admissible expert testimony in the form of an opinion or inference is not objectionable merely because it embraces an ultimate issue. *See* I.R.E. 704. The location of the entrance for the easement was an issue in the case. Johnson's opinion assisted the district court in its decision. Thus, Johnson's opinion was proper I.R.E. 702 evidence. It did not supplant the district court's function because the district court was free to reject any of the evidence presented. The district court did not err in finding that Johnson qualified as an expert, admitting the testimony, and considering that testimony to determine there was no genuine issue of material fact regarding the parties' intent with respect to the location of the commencement of the easement.

### 2.   Godde's declaration

The Dotsons and Williamses argue that the district court erred in considering portions of Godde's declaration because, while Godde "can testify to F&G's intent, he cannot testify to the intent of the easement agreement." The Dotsons and Williamses assert that sections 43 and 44 of

---

[2]      The Dotsons' and Williamses' assertions appear to rely on the prerequisite that the terms of the easement agreement are so ambiguous as to require knowledge of the thoughts of the drafters at the moment of its creation. However, Johnson's declaration informs the district court that the intent must be clear because there is no possible reasonable alternative to the intent at the moment of drafting. Therefore, Johnson's expert witness opinion testimony aided the district court to "understand the evidence or to determine a fact in issue." *See* I.R.E. 702.

Godde's declaration are conclusory and argumentative without offering supporting evidence of the alleged deficiencies in the declaration. F&G argues that the Dotsons and Williamses waived the argument on appeal for failure to argue harm to a substantial right.

In his declaration, Godde avers that he is the managing member of F&G and served in that role at "all times relevant to this matter." In section 19 of his declaration, Godde avers that Steven Nemback approached Godde about purchasing property. In section 27 of his declaration, Godde describes the negotiation with the Nembacks regarding the easement and explains that it was for the purpose of allowing F&G to "retain[] their rights of ingress/egress to Highway 95 vis a vis the Whitlaw interchange." According to Godde, F&G wanted the easement to "serve all F&G property and be wide enough to create a public road in the future." In section 28 of his declaration, Godde describes communications between F&G and the Worley Highway District, which desired to use a portion of the easement to create a public road in the future that required the easement to be at least 70 feet wide. In sections 34 and 35 of his declaration, Godde states that he executed the closing documents for the sale of the property, including the Grant, on behalf of F&G. In section 44 of his declaration, Godde states that the final sentence included in the legal description is not accurate and that the description suggested:

> [T]hat the property to the south, west and north are the "dominant estate hereunder." Such language is not consistent with the expressed intent in the body of the Easement to benefit all "Grantee Gross Property." This final sentence was included by inadvertence and/or mistake and was not intended to change or alter the clear intent of the Easement to benefit all property owned by F&G.

Finally, Godde avers that the intent of the easement "was to benefit all real property owned by F&G."

Again, the Dotsons' and Williamses' assertions are conclusory and unsupported by argument pertaining to each assertion. A party waives an issue on appeal if either argument or authority is lacking. *Powell*, 130 Idaho at 128, 937 P.2d at 440. Even if considered on the merits, the assertions still fail. The Dotsons' and Williamses' belief that Godde's statements are argumentative and conclusory does not provide a legal basis to conclude that the district court abused its discretion by considering the declaration. The Dotsons and Williamses provide no authority either requiring or permitting portions of a declaration to be stricken for being argumentative.

7

The Dotsons' and Williamses' claim that portions of Godde's declaration are conclusory overlooks his reliance on the language of the Grant. The Dotsons and Williamses assert that the portions of Godde's declaration that state the easement was created to benefit F&G should be stricken because he "cannot testify to the intent of the easement agreement." This argument fails because the language Godde relied on is also included in the option agreement (attached as Exhibit 8 to Godde's declaration), and the Grant and Godde's inferences are supported by citation to portions of documents in the record.

Finally, the Dotsons and Williamses assert that the sections of Godde's declaration that state that portions of Exhibit B were included by inadvertence or mistake should be stricken from the record but simultaneously argue that these sections show that there is ambiguity. The ambiguity argument will be addressed below. However, the Dotsons and Williamses cite no reason why a declaration that creates ambiguity either requires or permits a district court to strike the declaration from the record. The district court did not err in considering Godde's declaration.

## B.      Dominant Estate

The Dotsons and Williamses argue that the district court erred in finding that the easement serves a dominant estate comprised of all property owned by F&G. The Dotsons and Williamses contend that the easement provisions are contradictory and inconsistent and that the district court failed to properly analyze the terms regarding the dominant estate in the Grant. More specifically, the Dotsons and Williamses argue that, although the district court recognized the contradictory dominant estate language, it did not analyze either the reasonableness of the parties' respective positions or consider whether the agreement's language supported the parties' conclusions. They further argue that the district court erred in failing to find the easement agreement was ambiguous and erred in granting summary judgment when genuine issues of material fact were raised regarding the parties' intent.

Whether a deed is ambiguous is a question of law, over which we exercise free review. When this Court interprets a deed, the primary purpose is to seek and give effect to the real intentions of the parties. If the language of a deed is plain and unambiguous, the intention of the parties must be ascertained from the deed itself and extrinsic evidence is not admissible. Conversely, when a trial court finds a document to be ambiguous, the trial court may consider parol evidence to discover the drafter's intent. To determine whether a deed is ambiguous, it must

8

be reviewed as a whole. Uncertainties should be treated as ambiguities; such ambiguities are subject to be cleared up by resort to the intention of the parties as gathered from the deed, from the circumstances attending and leading up to its execution, from the subject matter, and from the situation of the parties at the time. *Baker v. KAL, LLC*, 163 Idaho 530, 534, 415 P.3d 939, 943 (2018).

In its memorandum decision and order on F&G's motion for summary judgment, the district court set forth both parties' interpretations and included citations to the Grant and Exhibit B. The district court then cited the Grant, which describes the Grantee Gross property as "numerous of tracts of land adjacent, adjoining or contiguous by virtue of other Grantee owned tracts, thereto including combinations or subdivisions of Grantee land ownership, now owned or hereinafter acquired." The Dotsons and Williamses have not identified any additional analysis the district court failed to provide in determining whether the dominant estate was an ambiguous term. It appears that the Dotsons and Williamses believe the last sentence of Exhibit B alters or otherwise makes ambiguous the definition of the dominant estate. The Dotsons and Williamses contend that they relied on the last sentence in Exhibit B to support their position that the dominant estate was limited to F&G's owned property that shared the easement property's southern, western, and northern boundaries. The last sentence states: "The southern, western and northern boundary lines of said 70 foot strip being coincidental to the boundary lines of the adjoining real property owned by Grantee, and the dominant estate hereunder." F&G responds that ambiguity does not occur merely because the Dotsons and Williamses present a different understanding but, rather, a finding of ambiguity requires at least two different reasonable interpretations of a term or it must be nonsensical. F&G argues that Exhibit B was included only for the limited purpose of defining the easement and therefore cannot be used to modify the scope of the dominant estate as detailed in the Grant and that the Dotsons' and Williamses' interpretation would lead to an absurd result.

The district court did not err in finding that the term dominant estate was unambiguous. The Dotsons and Williamses argue that the dominant estate was unclear because the directional terms included in Exhibit B do not reflect evidence of which property F&G owned. The Dotsons and Williamses have presented no argument as to why the final sentence of Exhibit B, which defines the location of the easement, would affect their understanding of the scope or location of the dominant estate. Further, the last sentence referenced by the Dotsons and Williamses contains

9

a clause, which states that the easement will be "adjoining real property owned by Grantee, *and the dominant estate hereunder*." (Emphasis added). The dominant estate hereunder cannot reasonably be interpreted as anything other than the Grantee's Gross Property as defined in the Grant.

The Dotsons and Williamses argue that the easement agreement language, which states that F&G owns numerous tracts of land "adjacent, adjoining, or contiguous," is ambiguous because the quoted terms are not defined to show which of F&G's lands were intended to be included in those terms. Further, the Dotsons and Williamses contend that the terms are ambiguous and do not reflect the district court's interpretation--that all F&G's property was encompassed in the definition--because F&G has property that is not adjacent, adjoining, or contiguous to the Dotsons' and Williamses' properties. However, this selected clause does not reflect an accurate depiction of the Grant as a whole. The section titled "Appurtenances" states that the benefit of the easement shall be for both the Grantee's Gross Property (as defined by the terms adjacent, adjoining, or contiguous to the easement) and for other property now owned or later acquired by F&G. The second conjunction "and" in the final sentence of Exhibit B leads to an unambiguous conclusion that the easement is to benefit more than just the land defined as Grantee's Gross Property.

Therefore, the district court did not err in finding the terms of the Grant unambiguously defined the dominant estate as being all property owned by F&G. Because the terms were unambiguous, we need not address this issue further.

The Dotsons and Williamses also argue that, if the terms of the easement agreement were unambiguous regarding the dominant estate, the district court erred by applying the incorrect contract construction. Specifically, the Dotsons and Williamses argue that the district court erred by failing to give meaning to "specific terms over general terms" and thereby incorrectly determined the estate was the whole of F&G's property owned in 2018. The Dotsons and Williamses state that, if the terms were unambiguous then Exhibit B, the appurtenances clause, and the Grant clause must be read harmoniously. However, as stated above, the Dotsons and Williamses have failed to explain how the final sentence in Exhibit B can be read to create a different definition for the dominant estate. The Grant specifically references the parcels to the south, west, and north and then includes the phrase "and the dominant estate hereunder" does not explicitly or implicitly serve to alter the definition of the dominant estate.

10

## C.    Easement Location

The Dotsons and Williamses argue that the district court erred in finding the easement location was unambiguous because it failed to properly analyze whether the provisions were reasonably susceptible to conflicting interpretations.  The Dotsons and Williamses argue there were conflicting interpretations, and thus an ambiguity, because the parties had different understandings of the easement location.  Finally, the Dotsons and Williamses argue that the district court erred in awarding summary judgment when there were issues with Johnson's credibility and genuine issues of material fact remaining.  F&G argues that the terms of the location are not ambiguous when read in full and when the terms are given their plain meaning.

First, the Dotsons and Williamses ignore the district court's analysis of whether the easement location was ambiguous.  As the Dotsons and Williamses acknowledge, the district court correctly identified the parties' different positions and found that the Dotsons' and Williamses' interpretation does not comport with the plain language of Exhibit B.  The Dotsons and Williamses fail to identify, or support with authority, what else the district court should have done but did not do.  A party waives an issue on appeal if either argument or authority is lacking.  *Powell*, 130 Idaho at 128, 937 P.2d at 440.  Therefore, the Dotsons' and Williamses' assertion that the district court failed to conduct an ambiguity analysis fails.

Next, the Dotsons and Williamses have failed to show the district court erred in finding the location of the easement to be unambiguous.  The Dotsons' and Williamses' belief that the easement began at the southern portion of Parcel 1, rather than on the eastern portion of the property to allow a connection to Whitlaw road, is not a reasonable interpretation of the agreement. Exhibit B states that the easement is "[c]ommencing at the approach of Whitlaw Road and proceeding to the southern boundary line of the South Half of the South Half" of the servient property.  The district court held that, "if the approach were at the southern boundary of the Dotsons' Parcel (Parcel 2) as shown in Exhibit C, the Easement could not proceed to the southern boundary line as described."  The Dotsons and Williamses assert their position is based on Exhibit C, which depicts the entry of the easement starting at the southeast corner of the servient property.  The Grant discusses the use of Exhibit C as a "general depiction" and Exhibit B as a description of the easement.

11

The Dotsons' and Williamses' assertion that Exhibits B and C show the easement beginning at two different locations, therefore making it ambiguous, is inconsistent with their own argument regarding interpretation. The Dotsons and Williamses cite to *Caldwell Land & Cattle, LLC v. Johnson Thermal Sys. Inc.*, 165 Idaho 787, 808, 452 P.3d 809, 830 (2019), and assert that, "in Idaho, it is well established that specific provisions [in] a contract control over general provisions where both relate to the same thing." The Grant refers to the description of the easement being depicted in Exhibit B and "generally depicted" in Exhibit C. Thus, the specific description in Exhibit B controls over the more general depiction in Exhibit C. But, regardless, Exhibits B and C do not portray the easement using the same method of depiction. Exhibit B is the legal description of the easement, while Exhibit C is a rough diagram lacking any detail about the entrance of the easement. The specific provisions in Exhibit B and the general depiction in Exhibit C do not conflict and create no ambiguity and no genuine issue of material fact remains as to the easement.

**D.      Attorney Fees in the District Court**

The Dotsons and Williamses argue that the district court erred in finding that they acted frivolously and therefore erred in awarding attorney fees to F&G pursuant to I.C. § 12-121. The Dotsons and Williamses argue that, in its memorandum in support of its motion for summary judgment, F&G did not seek summary judgment on any of the Dotsons' and Williamses' affirmative defenses--including lack of consideration supporting the Grant. Specifically, the Dotsons and Williamses claim that "no argument or authority was advanced regarding the affirmative defense in the opening brief. Thus, they had no argument to which they had to respond." The Dotsons and Williamses also argue that they were under no obligation to present argument, evidence, or legal authority to support their affirmative defenses. Finally, the Dotsons and Williamses argue that the district court abused its discretion in awarding attorney fees because counsel for F&G failed to provide detailed timesheets and the district court erred in failing to analyze each relevant factor for awarding attorney fees.

This Court applies an abuse of discretion standard when reviewing a district court's award of attorney fees, and the "party appealing an award of statutory attorney fees bears the burden of demonstrating a clear abuse of that discretion." *Berkshire Invs., LLC v. Taylor*, 153 Idaho 73, 80, 278 P.3d 943, 950 (2012). When a trial court's discretionary decision is reviewed on appeal, the

12

appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

The district court awarded F&G attorney fees, in part, based on what it deemed as the Dotsons' and Williamses' frivolous argument regarding whether the grant of the easement was supported by consideration. F&G's memorandum in support of its motion for summary judgment included declarations of Johnson and Godde. In section 29 of Godde's declaration, he noted that he "negotiated a lower purchase price for the Subject Property because of the 3 acres that would be encumbered by the easement." In its opposition to F&G's motion for summary judgment, the Dotsons and Williamses included Steve Nemback's declaration, wherein he disagreed with section 29 of Godde's declaration and stated that the Nembacks paid full price for the Subject Property. The Dotsons and Williamses then argued in a one-paragraph section that there was a disputed issue of material fact regarding whether there was consideration supporting the easement agreement. Based on this limited argument, and after recognizing the applicable law, the district court awarded attorney fees under I.C. § 12-121, concluding:

> The only evidence put forth by [the Dotsons and Williamses] to support this position was that, contrary to Mr. Godde's testimony that the reduced purchase price of the property was consideration for the Easement Agreement, Mr. Nemback stated that he paid full purchase price for the property. [the Dotsons and Williamses] offered no persuasive authority to support their assertion. . . . [the Dotsons' and Williamses'] argument lacked foundation, and was therefore frivolous.

At the hearing on their motion for reconsideration, the Dotsons and Williamses cited caselaw for the first time and argued that there was a dispute as to the price negotiated between the Nembacks and Godde. The district court did not consider these arguments because they were raised for the first time on reconsideration. Because the Dotsons and Williamses failed to raise these arguments during summary judgment, the district court properly limited its decision to the original one-paragraph argument regarding the claimed lack of consideration. Such argument was unsupported by authority and was therefore frivolous.

13

The Dotsons and Williamses incorrectly argue that F&G did not put their affirmative defense regarding lack of consideration at issue in its motion for summary judgment. A "nonmoving defendant has the burden of supporting a claimed affirmative defense on a motion for summary judgment." *Valiant Idaho, LLC. v. VP Inc.*, 164 Idaho 314, 325, 429 P.3d 855, 866 (2018). In its motion for summary judgment, F&G's first request was to declare the easement valid. The Dotsons and Williamses submitted an affirmative defense that the grant of the easement lacked consideration, which, if proven, would have defeated the easement in its entirety. Thus, as the nonmoving party, the Dotsons and Williamses had the burden to support their defense with admissible evidence, which they did not do. Idaho Code § 12-121 permits the prevailing party to be awarded attorney fees when the trial court "finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." Therefore, as the Dotsons and Williamses asserted an affirmative defense--without providing supporting argument, authority, or evidence-- the district court did not err in finding that their affirmative defense was pursued frivolously.

The Dotsons and Williamses also argue that the district court abused its discretion in awarding attorney fees because F&G failed to provide detailed timesheets to support its request, thereby limiting scrutiny of the reasonableness of the requested fees. F&G's request for attorney fees was supported by a memorandum, a declaration by F&G's attorney, and a summary report.

The district court considered I.R.C.P. 54, which permits the district court to grant attorney fees to the prevailing party when permitted by statute or contract. The district court further noted that it would consider all relevant factors, which are listed in I.R.C.P. 54(e)(3). The district court relied on the Idaho Supreme Court's holding in *Bailey v. Bailey*, 153 Idaho 526, 531, 284 P.3d 970, 975 (2012), and stated that "precise and detailed time records are not always required in order for the trial court to consider the time and labor factor" of I.R.C.P. 54(e)(3)(A). Citing to *Bailey*, the district court acknowledged that a lack of supporting documentation for the requested fees "hinders the Court in its determination as to the reasonableness of the fees." *See Bailey*, 153 Idaho at 532, 284 P.3d at 976.

F&G requested costs and attorney fees. F&G submitted a summary of invoices listed by month; no itemized billing or specific description of the legal work performed was provided. The district court explained that, without detailed documentation, it must exercise its discretion in awarding fees and consider "what a reasonable fee award would be for the time incurred by F&G

14

in defending against [the Dotsons' and Williamses'] frivolous assertion of lack of consideration," which was limited to one page of the Dotsons' and Williamses' sixteen-page brief. The district court noted that F&G's response was two-and-one-half pages of its fifteen-page reply brief consisting of caselaw, statutory authority, and undisputed facts. The district court noted this page count amounted to 17 percent of the total page count of its brief and therefore awarded F&G 17 percent of its requested amount of fees. However, the district court listed the total amount of attorney fees requested by F&G to be $58,643 and took 17 percent of that number to award the fees. The district court does not explain how it came to that valuation nor is this exact amount included in any fee requested by F&G.[3] Further, the district court does not explain how it valued $58,643 as the total fees incurred from the fifteen-page brief of which 17 percent of the work on the brief was devoted to the two-and-one-half page consideration issue. Because this valuation does not appear to be based on reason, the district court abused its discretion in this award of fees.

The Dotsons and Williamses rely on *Sun Valley Potato Growers, Inc. v. Tex. Refinery Corp.*, 139 Idaho 761, 769, 86 P.3d 475, 483 (2004), where the Idaho Supreme Court held that it is "incumbent upon a party seeking attorney fees to present sufficient information for the court to consider factors as they specifically relate to the *prevailing* party or parties seeking fees." The Idaho Supreme Court held that the district court erred in awarding attorney fees to the prevailing party because it exercised its right to claim privilege by refusing to submit timesheets. *Id.* Similarly, in *Bailey*, the Idaho Supreme Court upheld a district court's denial of attorney fees when the moving party failed to support the request with "even an estimate of the total time, nor any other information that would have permitted the trial court to determine the basis upon which the fee was calculated, and thus its reasonableness." *Bailey*, 153 Idaho at 532, 284 P.3d at 976.

Finally, the Dotsons and Williamses argue that the district court erred in failing to analyze the factors set forth in I.R.C.P. 54(e). Because we determined above that the district court abused its discretion in its award of attorney fees, we need not address whether the district court correctly analyzed the I.R.C.P. 54(e) factors.

---

[3] In the declaration of Megan O'Dowd in support of F&G's memorandum of attorney fees and costs, F&G lists the total amount requested for attorney fees as $52,643.00. The total amount requested, including costs, was $58,453.74.

Upon determination that a trial court has abused its discretion, "the appellate remedy ordinarily is not to usurp the judge's authority by exercising such discretion ourselves." *Evans v. Sawtooth Partners*, 111 Idaho 381, 387, 723 P.2d 925, 931 (Ct. App. 1986). Rather, the appropriate remedy "is to remand the case for reconsideration in light of the correct legal standard." *Id*. Therefore, we vacate the district court's order awarding attorney fees and remand with instructions to the district court to determine an appropriate award of attorney fees to F&G.

**E.      Attorney Fees on Appeal**

F&G seeks attorney fees on appeal pursuant to I.C. § 12-121. An award of attorney fees may be granted under I.C. § 12-121 and Idaho Appellate Rule 41 to the prevailing party and such an award is appropriate when the court finds that the appeal has been brought or defended frivolously, unreasonably, or without foundation. As F&G prevailed on the majority of the issues, we conclude it is the prevailing party on appeal. However, because we hold that the Dotsons' and Williamses' attorney fees issue is not frivolous, F&G is entitled to costs but not attorney fees on appeal.

## IV.

## CONCLUSION

The district court did not err in considering the declarations of Johnson and Godde. The district court did not err in finding the easement agreement was unambiguous as to the dominant estate. The district court did not err in interpreting the Grant. The district court did not err in finding the location of the easement to be unambiguous. The district court did err in the amount of attorney fees awarded to F&G. Therefore, the district court's amended judgment is affirmed; however, the district court's order awarding attorney fees is vacated and remanded with instructions. F&G is awarded costs, but not attorney fees, on appeal.

Judge HUSKEY and Judge LORELLO, **CONCUR**.